## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELLE MOVE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>   v.<br><br>NEW CIBO VITA, LLC,<br><br>                    Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michelle Move ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant New Cibo Vita, LLC ("Cibo Vita") on behalf of all persons who purchased Defendant's Nature's Garden Probiotic Strawberry Yoggies and Nature's Garden Probiotic Mixed Berry Yoggies (the "Products").

2. Cibo Vita owns and manufactures Nature's Garden snacks, which is a prominent snack brand that is sold widely throughout the Unites States. Touting itself as a healthy and all-natural snack option, Cibo Vita promotes its brand as one where consumers can "Snack With Purpose."

3. Cibo Vita sells Trail Mixes, Nut Snacks, and Probiotic Fruit Snacks. These snacks are sold at bulk stores, grocery stores, and local market stores, including Costco, Acme, ShopRite, and Save a Lot, to name just a few in the State of New Jersey.

4. Cibo Vita advertises the functionality of their Probiotic Fruit Snacks, saying on their website, "Our snacks make no compromises on flavor while delivering functional benefits.

Committed to wellness innovation, we offer a range of delicious fruit snacks **enhanced with billions of probiotics** and packed with fiber to support digestive wellness and immune health." (Emphasis added).

5. One of Cibo Vita's most popular snacks under their "Probiotic Fruit Snacks" line is their "Probiotic Yoggies." Cibo Vita's Probiotic Yoggies are sold in Strawberry and Mixed Berry flavors.





6. On their website, Nature's Garden explains that "Yoggies are real fruit pieces, coated in a delectably smooth yogurt, delivering a taste experience of natural sweetness and yogurty tartness. Oh, the best part? Each Yoggies is loaded with dietary fiber and **probiotics - 2 billion per serving to be exact**." (Emphasis added).

7. On their packaging, Nature's Garden prominently advertises "2 BILLION PROBIOTIC CULTURES" and "NO ARTIFICIAL INGREDIENTS" with check marks. These claims are featured on all Yoggies packaging, advertising, and marketing.

8. However, despite Cibo Vita's bold assertion of the presence of "2 BILLION PROBIOTIC CULTURES," those probiotics are nowhere to be found in the products themselves. Far from what Cibo Vita claims, Plaintiff's independent testing verified that a serving of Yoggies does not contain 2 billion probiotic cultures or anywhere near it.

3

9. Cibo Vita's "NO ARTIFICIAL INGREDIENTS" claim is no more truthful. Yoggies' labeling lists chemically engineered and artificially processed ingredients, namely, Microencapsulated Probiotic Lactobacillus Rhamnosus GG.

10. By falsely promising that Yoggies are "healthier-for-you" and "better for you," Cibo Vita preys on consumers trying to make healthy choices for themselves and their families, duping them into purchasing the products for the perceived health benefits that Yoggies' products simply do not have. Unfortunately, consumers are falling for Cibo Vita's deception. As one verified consumer posted on Cibo Vita's website, "I got tired of taking Probiotic Pills so this is a great alternative. Will purchase again." Another consumer posted an Amazon review proclaiming that Yoggies product proclaiming "taste[s] much better than a probiotic tablet or pill. Plus I'm never quite certain what is in a probiotic pill but I am pretty certain of what is in this product."

11. The harm Cibo Vita has caused and continues to cause to consumers through its false advertising must come to an end. Consumers have been economically harmed by Cibo Vita's unlawful conduct. Among other things, Plaintiff seeks monetary and injunctive relief to stop Cibo Vita from advertising that Yoggies have the ingredients and health benefits it falsely claims.

## THE PARTIES

**A. Plaintiff**

12. Plaintiff Michelle Move is a resident and citizen of Monroe, New Jersey. On or around February 26, 2025, Plaintiff purchased one package of Cibo Vita's Nature's Garden Strawberry Probiotic Yoggies from Costco Wholesale in Hazlet, New Jersey.

4

13. When purchasing the Product, Plaintiff reviewed the accompanying labels and advertising, and understood them as representations by Defendant that the Products contained at least 2 billion probiotics and were free from artificial ingredients. Plaintiff relied on these representations in deciding to purchase the Products manufactured and sold by Defendant, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products from Defendant, or would have paid substantially less for them, had she known that they did not contain 2 billion probiotics and did in fact have artificial ingredients. The Products Plaintiff purchased were worthless because they did not contain probiotics, or contained significantly less than 2 billion probiotics, and because they did contain artificial ingredients. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's deceptive and unfair conduct.

14. Plaintiff would be willing to purchase the Products again, provided that she could be ensured that Defendant reformulated its Products so that they contain the 2 billion probiotics advertised and so that they do not contain artificial ingredients.

**B. Defendant**

15. Defendant New Cibo Vita, LLC is a Delaware limited liability company with its principal place of business at 12 Vreeland Ave, Totowa, NJ 07512.

16. Defendant manufactures, markets, distributes, and sells Nature's Garden Probiotic Yoggies. Defendnant markets, distributes, and sells the aforementioned Products to consumers throughout the United States through its online website and through third-party retailers stores. Defendant manufactures, advertises, markets, and sells its Probiotic Yoggies throughout the State of New Jersey and the United States. Defendant's Probiotic Yoggies, including those purchased

by Plaintiff, are available in both retail establishments and online throughout New Jersey and the United States.

17. Defendant manufactures, markets, advertises, and distributes the Probiotic Yoggies throughout the United States. Defendant created and/or authorized the false, misleading, omitting, and deceptive advertisements, packaging, and labeling of the Products.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and at least one member of the proposed class is a citizen of a state different from Defendant.

19. This Court has personal jurisdiction over Defendant, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant is domiciled in this District and has committed acts in this District or directed acts at this District constituting or contributing to the false advertising alleged, so a substantial party of the acts and events giving rise to the claims occurred in, or were directed at, this District.  Defendant has directed its false advertising into this District and Plaintiff and consumers are being harmed in this District.

## FACTUAL BACKGROUND

### A.  The Cibo Vita Company

20. Defendant Cibo Vita is a snack food manufacturer that primarily does business under its flagship name "Nature's Garden," which was launched in 2011.

21. Cibo Vita promotes itself as a manufacturer of "high-quality, innovative, 'better for you' snacks" intended "for today's health conscious, mindful snackers."

22. In 2023, Cibo Vita launched its "Probiotic Strawberry Yoggies" under the Nature's Garden brand name. Cibo Vita describes its Yoggies as "real fruit pieces, coated on delectably smooth yogurt."

23. Cibo Vita's Yoggies are spherical in shape with a creamy white color marked by contrasting colored cube-like corners and red edges peeking through the white coating.

**B.  Cibo Vita's False and Misleading Probiotic Claims**

24. To give itself a competitive advantage, Cibo Vita markets its Yoggies snacks as a "healthier" alternative.

25. Cibo Vita calls its product "**Probiotic** Yoggies Snack Packs" (emphasis added) and advertises that the snacks contain billions of probiotic cultures per serving (the "Probiotic Claims"). As detailed below, Cibo Vita's Probiotics Claims are in fact the centerpiece of its marketing, and an extraordinarily deceptive one at that.

26. The claim "✓ 2 BILLION PROBIOTIC CULTURES" features prominently on Yoggies packaging:



27. The back panel of the packaging also touts billions of probiotics, stating that "what makes our Yoggies more than a simply scrumptious snack is the **billions of probiotics** . . . tucked away inside." (emphasis added).

28. The back panel further highlights the purported health benefits of the probiotics: "While enjoying their yogurty-tang, our probiotics will work to ensure your digestive system remains in tip-top shape."



29. Cibo Vita also features Probiotic Claims on its Nature's Garden website. For example, the product page for Cibo Vita's Strawberry Yoggies states "Each Yoggies is loaded with dietary fiber and probiotics – 2 billion per serving to be exact."



30. That product page also says, "Reap the wonders of billions of probiotics with Nature's Garden Probiotic Strawberry Yoggies – a snack that's delicious and functional for the whole family."



Real fruit and creamy, natural yogurt in a bite-sized snack... need we say more? Reap the wonders of billions of probiotics with Nature's Garden Probiotic Strawberry Yoggies – a snack that's delicious and functional for the whole family. Chow down with this healthier-for-you treat that's creamy, chewy, and crazy delicious.

31. Cibo Vita's website also contains multiple blog posts touting Yoggies and its asserted probiotic benefits. For example, a blog post from February 19, 2024 (available as of February 13, 2025) states: "At Nature's Garden we love to think of ourselves as the bridge between taste and wellness. Our passion is to create products that not only taste good - but are also better for you. Imagine enjoying **2 billion probiotics** in a luscious fruit bite wrapped in creamy yogurt, or **5 billion live probiotics** combined with the immune-boosting power of elderberry, Vitamin C, and D. Intriguing - we know!" (emphasis added).

32. In another blog post from December 6, 2023 (available as of February 13, 2025), Cibo Vita claims that: "The creamy yogurt coating that envelops each Yoggie is brimming with billions of probiotics. Probiotics are live bacteria that play a crucial role in maintaining a healthy gut biome. They enhance digestion and support your immune system. What sets our Yoggies

11

apart is our patented microencapsulation system, ensuring that the power of each probiotic is retained as it journeys through your digestive system."

33. On some product packages, Cibo Vita goes even further, claiming that its Probiotic Strawberry Yoggies contain not just "2 BILLION," but rather "5 BILLION PROBIOTIC CULTURES," as shown in the Nature Garden's Facebook post below.



34. Cibo Vita makes the Probiotic Claims in an explicit attempt to communicate to consumers that the claimed billions of probiotics in Yoggies snacks make them healthier, and thus superior. For example, in one of Cibo Vita's most watched social media ads, a pregnant woman walks through an airport while looking at snack food options, and states that the other options are "so overpriced" and "are just not that good," while she promotes the alleged "2 billion probiotics" in Yoggies snacks.



35. Cibo Vita's Probiotics Claims have engendered undeserved positive media attention further amplifying the false claims to more consumers. For example, in 2023, Nature's Garden Probiotic Strawberry Yoggies was named the 2023 sofiTM New Product Award Winner in the Confectionery/Non-Chocolate category. But as set forth below, those claims, which are at the heart of Cibo Vita's aggressive marketing of its product, are demonstrably false and unlawful.

13

### C. **Cibo Vita's Probiotic Claims Have Been Proven Wrong**

36. Cibo Vita's Probiotic Claims are literally false, deceptive, and misleading. PIM has commissioned independent, industry-standard testing of Yoggies snacks, which confirmed that an individual serving does not contain 2 billion probiotic colony-forming units (CFU), a measure of live bacteria in probiotic products.

37. As confirmed by Plaintiff's independent third-party testing, a serving of Yoggies snacks contained none of the 2 billion probiotic cultures touted in the Probiotic Claims. The claims are not just literally false, but at an extremely egregious level of misrepresentation. Further, Plaintiff's testing revealed that "no growth was detected on any of the dilutions."

38. Cibo Vita also claims that the nonexistent "2 billion probiotic cultures" in Yoggies are "microencapsulated" in a "patented system," giving consumers the false impression that there is something special about or an added benefit to the purported probiotics. Whatever the "patented system" may be, it does not change the fact that the "2 billion probiotic cultures" are not in the product.

39. Irrespective of whether they are "microencapsulated" in a "patented system," the small proportion of the probiotic cultures that Cibo Vita falsely claims is in its products does not impart the health benefits Cibo Vita so brazenly advertises.

40. Cibo Vita's false Probiotic Claims take advantage of an ever-growing health-conscious consumer population. Probiotics have seen increasing popularity in recent years, as consumers are more and more aware of the importance of gut health and the gut microbiome. The interest in improving digestive and immune health among consumers is on the rise, with consumers turning to probiotic products to help them achieve those goals. The Probiotic Claims are material to whether consumers decide to purchase Yoggies.

41. Online product reviews for the Yoggies products on amazon.com (shown below) reveal that consumers purchase Yoggies snacks precisely because they believe and rely on the Probiotic Claims, reflecting the material nature of the Probiotic Claims.



T.I.A.

★★★★★ Way too delicious to stop at one serving...but do or else your belly might disagree!

Reviewed in the United States on April 23, 2023

Amazon Vine Customer Review of Free Product ( What's this? )

Probiotics are a critical component in one's daily nutrition regiment. And wrapped up like fruit snacks!?! Nature's Garden hit a home run on this product! The strawberry flavor is like eating a handful of super fresh berries, or even a gummy version of some homemade strawberry jam. There is just the right amount of yogurt covering on each one that complements the strawberry bites wonderfully. There are between 12-15 in each bag, based upon the +/-10 I have eaten so far. While I don't have any way of truly confirming the quantity of probiotic cultures that exist, I can confirm that my stomach and innards have been 'moving' along just fine... Word of caution, though: do not eat more servings at once than prescribed/suggested on the serving information, or else you might get a bit gassy and have cause to visit the restroom rather quickly. This, as unscientific as it may be, leads me to believe that these are legit, probiotic snacks. These are delicious, and both my children and I love the Yoggie Bites! My family highly recommends them for children and adults, alike.



Sarah B.

★★★★★ Delicious snacks!

Reviewed in the United States on April 26, 2024

Verified Purchase

Saw these at my work one day and had one and they were so delicious. So I bought a bag of these and for the amount in the wholesale bag, it lasted me for the month (if I practiced self-control). I love that it is a probiotic snack and it tastes delicious without the guilt. Just don't leave it in a hot area, otherwise, they will melt bc it is a yogurt coating. Other than that, love them and will be buying another pack soon.



Shannon R.

★★★★★ Delicious

Reviewed in the United States on March 8, 2024

Verified Purchase

I was looking for a healthier snack to munch on while I'm at work - when I came across these little nuggets - and am honestly surprised at how yummy they are. The texture is like a gummy, but wrapped in a delicious yogurt coating (with a bunch of probiotics). Like a chocolate covered raisin, but healthier. 10/10 would recommend.

42. Indeed, some consumers even eat Yoggies specifically to complement or even replace probiotic supplements. For example, a representative review posted on amazon.com on December 23, 2023, and shown below, is titled "Better than a Probiotic pill, simple ingredients" and states that Yoggies "taste much better than a probiotic tablet or pill. Plus I'm never quite certain what is in a probiotic pill but I am pretty certain of what is in this product."



43. Likewise, consumer reviews on Cibo Vita's website, naturesgarden.net, further confirm that consumers believe and rely on the material Probiotic Claims when deciding to purchase Yoggies. One verified consumer posted a review on April 8, 2024, stating that she uses Yoggies snacks to replace her dedicated probiotic supplements: "I got tired of taking Probiotic Pills so this is a great alternative. Will purchase again."



44. These responses illustrate two critical features of Cibo Vita's false claims. First, they clearly mislead consumers by grossly exaggerating the quantities of probiotics in Yoggies. Second, those false claims are material to consumers' purchase decisions, because they rely on

them to select Yoggies over other products. For example, by misleading consumers into believing that a serving of Yoggies snacks provides the number of probiotics stated in the Probiotic Claims, Cibo Vita has caused consumers to forego the benefits of true probiotic supplements and to waste their hard-earned money on products they would not have otherwise purchased.

**D.  Cibo Vita's False and Misleading Ingredients Claims**

45. Cibo Vita's false advertising does not stop at its Probiotics Claims. It also makes the claim that Yoggies does not contain artificial ingredients (the "Ingredient Claims"). The Ingredient Claims are, like the Probiotic Claims, literally false.

46. On the front panel of the packaging for some of the Yoggies products, Cibo Vita makes the following promise: "✓ NO ARTIFICIAL INGREDIENTS."



47. Cibo Vita's false Ingredients Claims are bolstered by the language "POWERED BY PLANTS" on the top of every Yoggies front label, which further suggests to consumers that the product is made without any artificial ingredients.



48. Furthermore, Cibo Vita's use of the brand name "Nature's Garden," in conjunction with the overall product packaging containing the statements identified above in Paragraphs 46 and 47, clearly communicates to consumers that the company's snack products are made without any artificial ingredients. These various claims are part of Cibo Vita's concerted plan to mislead consumers about the health benefits of Yoggies.

49. Despite these repeated representations, the ingredients panel on the back of the Yoggies packages reveals that Cibo Vita's product is made with an artificial ingredient Microencapsulated Probiotic Lactobacillus Rhamnosus GG.

50. Microencapsulated Probiotic Lactobacillus Rhamnosus GG describes the strain of probiotics in the microencapsulation technology that is allegedly in the Yoggies product. Though Lactobacillus Rhamnosus GG is itself naturally occurring, the microencapsulation required to artificially preserve it is synthetically developed and does not exist in nature.

51. Consumers considering the Yoggies product label and taking the Ingredient Claims as true would reasonably believe that Microencapsulated Probiotic Lactobacillus Rhamnosus GG is not an artificial ingredient.

52. Consumers considering the Yoggies product label and taking the Ingredient Claims as true would reasonably believe that Microencapsulated Probiotic Lactobacillus Rhamnosus GG is not made using an artificial process.

53. Cibo Vita's false and misleading Ingredient Claims harm consumers who purchase Yoggies because of their interest in healthy foods with no artificial ingredients.

54. The Ingredient Claims are material to whether consumers decide to purchase Yoggies. As indicated in the examples above, consumers purchase Yoggies because they are misled into believing the product contains all-natural probiotics. These material, false claims are featured on Yoggies packaging and throughout its marketing.

**E.  The False and Misleading "Healthy" Claims**

55. In addition to aggressively and falsely marketing the number of probiotic cultures in Yoggies and the purported lack of artificial ingredients, Cibo Vita positions and promotes Yoggies snacks as "healthy" by repeatedly stating that the product is a "healthy snack," "healthier-for- you" and "better for you" (the "Healthy Claims"). But yet again, these claims are false.

56. For example, on the homepage for its Nature's Garden website, Cibo Vita prominently declares: "We take snacking seriously! We want you to feel like the best YOU possible, so we create deliciously healthy snacks that support a better-for-you lifestyle. Check out our best sellers - we like to think of them as snacking royalty!" (emphasis added). The referenced "best sellers" include Yoggies, among other products.

57. On the product page for its Strawberry Yoggies, Cibo Vita invites consumers to "Chow down with this healthier-for-you treat that's creamy, chewy, and crazy delicious." (emphasis added).

58. Despite its bold Healthy Claims, Cibo Vita's Yoggies snacks are not "healthy." Cibo Vita adds 7 grams of sugar per serving to the product, which also has 2.5 grams of saturated fat per serving. Per FDA guidelines, products like Yoggies must not exceed 2.5 grams of added sugar or 2 grams of saturated fat to qualify as "healthy." Yoggies has more than double the permitted amount of added sugar and exceeds 2 grams of saturated fat. The product is not "healthy," a health-snack, or a "seamless blend of taste, health, and innovation" as Cibo Vita claims.

59. Moreover, even if Cibo Vita's Yoggies snacks contained the claimed "2 billion probiotic cultures," which they do not, the mere presence of these probiotics alone is not enough for Cibo Vita to make the Healthy Claims. Whether a probiotic is "healthy" depends on how it is delivered to the body and its impact on the human body after ingestion. Cibo Vita offers no substantiation for its claim that Yoggies snacks have a healthy impact once ingested. Cibo Vita simply makes the claim.

60. These false Healthy Claims are amplified through Cibo Vita's social media on TikTok, Instagram, Facebook, Pinterest, and also appear on websites for popular retailers, including Walmart, Amazon, Costco, and Sam's Club.

61. The false and misleading Healthy Claims prey on consumers searching for healthy snacks. And they have been effective. Consumer testimonials reflect the material nature of these claims and resulting deception of parents (among others) duped into believing that the Yoggies product is a health-conscious choice and safe snack for their children. For example, in the

YouTube video linked below, a mother refers to Yoggies as "snacks that you trust your kids to eat" and that are "mom approved."



(https://www.youtube.com/watch?v=rEXEw1gLT5g)

62. The false and misleading Healthy Claims cause consumers to believe that Yoggies are healthy and nutritious. The Healthy Claims are material to whether consumers decide to purchase Yoggies.

**F.  Injuries to Plaintiff and the Class Members**

63. When Plaintiff purchased Defendant's Products, Plaintiff did not know, and had no reason to know, that Defendant's Products did not contain the billions of probiotics and were not free from artificial ingredients as advertised. Plaintiff would not have purchased Defendant's

Products had she known the Products did not contain the billions of probiotics as advertised, or would have paid substantially less for them.

64. Consumers lack the ability to test or independently ascertain or verify a Product's microscopic nutritional ingredients like probiotics, especially at the point of sale, and therefore must rely on Defendant to report truthfully and honestly what the Products contain on the Products' packaging and labels.

65. Further, given Defendant's position as a sophisticated food manufacturer, Plaintiff and reasonable consumers trusts and relied on Defendant's representations and omissions regarding the presence of billions of probiotics and lack of artificial ingredients in the Products.

66. Defendant boldly claims and advertises that its Probiotic Yoggies contain "2 BILLION PROBIOTICS," have "NO ARTIFICIAL INGREDIENTS," and are "healthy." A reasonable consumer would understand this to mean that Defendant's Yoggies contain at least 2 billion probiotics, have no artificial ingredients, and are healthy.

67. No reasonable consumer would have paid any amount for probiotic food products that do not contain probiotics, nor for products free from artificial ingredients that in fact contain artificial ingredients, nor for healthy products that are actually unhealthy.

68. Thus, if Plaintiff and the Class Members had been informed that Defendant's Products did not contain probiotics, or contained a significantly less amount of probiotics, and contained artificial ingredients, they would not have purchased the Products or would have paid substantially less for the Products.

69. Defendant's false, misleading, and deceptive representations and omissions regarding the presence of probiotics and lack of artificial ingredients in the Products are likely to continue

to deceive and mislead reasonable consumers and the public, as it has already deceived and mislead Plaintiff and the Class Members.

70. Plaintiff and the Class Members bargained for products that contained at least 2 billion probiotics and were free from artificial ingredients. Plaintiff and Class Members were injured by the full purchase price of the Products because (i) the Products are worthless, as they are probiotic products that contain no or substantially less probiotics, and (ii) Plaintiff and Class Members would not have purchased the Products or would have paid substantially less for them had Defendant decided not to falsely represent that the Products contained probiotics, were free from artificial ingredients, and were healthy.

71. As alleged above, Plaintiff and Class Members' Products contained no or substantially less than 2 billion probiotics, contained artificial ingredients, and were unhealthy.

72. Plaintiff and Class Members are further entitled to compensatory, double, treble, and punitive damages, injunctive relief, attorneys' fees and costs, and any further relief as this Court deems just and proper.

## CLASS ACTION ALLEGATIONS

73. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

74. Plaintiff seeks to represent a class defined as all individuals in the United States who purchased Defendant Cibo Vita, LLC's Nature's Garden Strawberry Probiotic Yoggies and/or Nature's Garden Mixed Berry Probiotic Yoggies. Excluded from the Class is Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assignees, or other persons or entities related to or

affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

75. Plaintiff also seeks to represent a subclass consisting of Class Members in New Jersey (the "New Jersey Subclass" or "Subclass").

76. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

77. **Numerosity.** Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, Members of the Class and Subclass number in the hundreds of thousands. The precise number of Class and Subclass Members and their identities are unknown to Plaintiff at this time but will be determined through discovery. Class and Subclass Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

78. **Commonality.** Common questions of law and fact exist as to all Members of the Class and Subclass and predominate over any questions affecting only individual Class or Subclass Members. These common legal and factual questions include, but are not limited to, the following:

    a.   Whether the Products contain probiotics;

    b.   Whether Defendant knew or should have known that the Products do not contain probiotics;

    c.   Whether Defendant is liable to Plaintiff and the Classes for unjust enrichment;

    d.   Whether Defendant violated the New Jersey Consumer Fraud Act;

e.   Whether Plaintiff and the Classes have sustained monetary loss and the proper measure of that loss; and

f.   Whether the lack of probiotics renders Defendant's Products falsely and misleadingly labeled;

g.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive.

79. **Typicality.** The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all members of the Classes, purchased the Products, which were worth less due to the lack of probiotics. The representative Plaintiff, like all members of the Classes, has been damaged by Defendant's misconduct in the very same way as the members of the Classes. Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

80. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Members of the Class and Subclass. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class and Subclass.

81. **Predominance.** Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class and Subclass issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading labeling of its Products.

82. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Classes are relatively small compared to the burden and expense of individual litigation of her claims against Defendant. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

83. In the alternative, the Classes may be certified because:

    a.  the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

    b.  the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede her ability to protect her interests; and/or

    c.  Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

### <u>COUNT I</u>
**Violation of the New Jersey Consumer Fraud Act, N.J.S.A § 56.8-1, et seq.**
**(On Behalf of the New Jersey Subclass)**

84. Plaintiff repeats the allegations contained the paragraphs above as if fully set forth herein.

85. Plaintiff brings this claim individually and on behalf of the New Jersey Subclass.

86. At all times relevant to this action, there was in full force and effect the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, et seq., which was enacted and designed to protect consumers against unfair, deceptive, or fraudulent business practices.

87. N.J.S.A. § 56:8-2 provides:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact … in connection with the sale or advertisement of any merchandise … whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

88. At all relevant times, Plaintiff, New Jersey Subclass members, and Defendant were "persons" within the meaning of N.J.S.A. § 56:8-1.

89. The Products manufactured, marketed, and sold by Defendant are merchandise within the meaning of the NJCFA.

90. Plaintiff and New Jersey Subclass members are consumers within the meaning of the NJCFA and are entitled to the statutory remedies made available herein.

91. Defendant violated and continues to violate the NJCFA by representing that its Products have characteristics, uses, and benefits which they do not have, and advertising the Products to have characteristics, uses, and benefits which Defendant knows the Products do not have.

92. Defendant violated the NJCFA by advertising the Products in the manners described above, when they knew, or should have known, that those representations and advertisements were false and/or misleading.

93. Defendant intended that Plaintiff and the members of the New Jersey Subclass would rely on its deception by purchasing the Products, unaware of the material facts described above. This conduct constitutes consumer fraud within the meaning of the NJCFA.

94. Defendant's conduct, as alleged herein, constitutes unlawful, unfair, and/or deceptive business practices within the meaning of the NJCFA.

95. Defendant's conduct is malicious, fraudulent, and wanton, and provides misleading information that the Products provide health benefits that less expensive or other products do not, when in fact scientific evidence demonstrates that the Products do not provide the advertised health benefits.

96. Defendant's conduct has proximately caused damage to Plaintiff and the New Jersey Subclass members, in the form of, *inter alia*, monies spent to purchase the Products they otherwise would not have, in an amount to be proven at trial.

97. Had Defendant represented accurate information and disclosed all material information regarding the Products in its advertising, marketing, and packaging, Plaintiff and the New Jersey Subclass members would not have purchased the Products or would have paid substantially less for the Products.

98. As a result of Defendant's violations of the NJCFA, Plaintiff and the New Jersey Subclass members are entitled to compensatory damages, actual damages, double damages, treble damages, injunctive relief, costs, and attorneys' fees.

## COUNT II
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class and New Jersey Subclass)

99. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

100. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and New Jersey Subclass against Defendant.

101. This claim is brought under the laws of the State of New Jersey.

102. "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009) (quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007)).

103. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn," New Jersey law, or, alternatively, general unjust enrichment law principles, applies to those claims. *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 58.

104. Plaintiff and the Classes conferred a benefit on Defendant in the form of monies paid to purchase Defendant's defective and worth less Products.

105. Defendant voluntarily accepted and retained this benefit.

106. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that the Products have billions of probiotics when in fact they do not, and have no artificial ingredients when they do, which caused injuries to Plaintiff and the Class members because: (a) they would not have purchased the Products on the same terms if the true facts concerning the Products' purported health benefits and contents had been known; and (b) they paid a price premium due to the misrepresentations in Defendant's advertising, marketing, and labeling.

107. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class for its unjust enrichment, as ordered by the Court.

108. Privity is not required. Nevertheless, Defendant is in privity with Plaintiff and members of the Class. Plaintiff and Class members were the intended beneficiaries of the Products. Defendant created the advertising at issue and warranted the Products to them directly and/or through the doctrine of agency. Further, Defendant knew the identity, purpose and requirements of Plaintiff and members of the Class and manufactured the Products to meet their requirements.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class and New Jersey Subclass)**

109. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

110. Plaintiff brings this Count for breach of express warranty on behalf of herself and the Nationwide Class and New Jersey Subclass under N.J.S.A § 12A:2-313, or, in the alternative, on behalf of a Class of similarly situated persons from his or her respective state of residence pursuant to the applicable provision identified below from his or her respective state of residence.

111. The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

112. At all times, New Jersey and the following 48 states, including the District of Columbia, have codified and adopted the provisions the Uniform Commercial Code governing the express warranty of merchantability: Ala. Code 1975 § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. § 47-2313; Ark. Code Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. Ann. § 4-2-

30

313; Conn. Gen. Stat. § 42a-313; Del. Code Ann. tit. 6 § 2-313; D.C. Code § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code Ann. § 28-2-313; 810 Ill. Comp. Stat. 5/2-313; Ind. Code. Ann. § 26-1-2-313; Iowa Code Ann. § 554.2313; Kansas Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; Me. Rev. Stat. Ann. tit. 11, § 2-313; Md. Com. Law Code Ann. § 2-313; Mass. Gen. Laws ch.106, § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code. Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code. Ann. § 30-2-313; Nev. Rev. Stat. Ann. § 104.2313; N.H. Rev. Stat. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Cent. Code § 41-02-30; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. Ann. tit. 12A, § 2-313; Or. Rev. Stat. § 72.3130; Pa. Stat. Ann. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2.313; Utah Code Ann. § 70A-2-313; Va. Code Ann. § 8.2-313; Vt. Stat. Ann. tit. 9A, § 2-313; Wash. Rev. Code. Ann. § 62A.2-313; W. Va. Code Ann. § 46-2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. Ann. § 34.1-2-313.

113. Plaintiff, and each Class member, formed a contract with the Defendant at the time Plaintiff and other members of the Class purchased the Products. The terms of that contract include the promises and affirmations of fact relating to the Products' purported probiotics and probiotic-health benefits made by Defendant on its product labels and repeated throughout its marketing campaign, as described above. This product labeling and advertising became part of the basis of the bargain and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other, and thus constituted an express warranty.

114. Defendant sold the goods to Plaintiff and other Class members, who bought the goods from Defendant.

115. All conditions precedent to Defendant's liability under this contract, including notice, have been performed by Plaintiff and the Class.

116. Defendant is in privity with Plaintiff and members of the Class. Plaintiff and Class members were the intended beneficiaries of the Products. Defendant created the advertising at issue and warranted the Products to them directly and/or through the doctrine of agency. Further, Defendant knew the identity, purpose and requirements of Plaintiff and members of the Class and manufactured the Products to meet their requirements.

117. Defendant breached the terms of this contract, including the express warranties, by not providing the Products capable of delivering the claimed health benefits. As a result of this breach, Plaintiff and the Class did not receive goods as warranted by Defendant.

118. As a proximate result of Defendant's breach of its contract and its warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## <u>COUNT IV</u>
### Breach of Implied Warranty of Merchantability
### (On Behalf of Plaintiff and the Nationwide Class and New Jersey Subclass)

119. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

120. Plaintiff brings this Count for breach of implied warranty on behalf of herself as a nationwide Class under N.J.S.A. § 12A:2-314 or in the alternative on behalf of a Class of similarly situated persons from his or her respective state of residence pursuant to the applicable provision, identified below, from his or her respective state of residence

121. The Uniform Commercial Code § 2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is

32

a merchant with respect to goods of that kind. To be "merchantable," goods must, *inter alia*, "conform to the promise or affirmations of fact made on the container or label if any." U.C.C. § 2-314(2).

122. At all times, New Jersey and the following 48 states, including the District of Columbia, have codified and adopted the provisions the Uniform Commercial Code governing the implied warranty of merchantability: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. § 47-2314; Ark. Code Ann. § 4-2 314; Cal. Com. Code § 2314; Colo. Rev. Stat. Ann. § 4-2-314; Conn. Gen. Stat. § 42a-2-314; Del. Code Ann. tit. 6, § 2-314; D.C. Code § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code Ann. § 28-2-314; 810 Ill. Comp. 810, 5/2-314; Ind. Code. Ann. § 26-1-2-314; Iowa Code Ann. § 554.2314; Kansas Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. art. § 2520; Me. Rev. Stat. Ann. tit. 11, § 2-314; Md. Com. Law Code Ann. § 2-314; Mass. Gen. Laws ch.106, § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code. Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code. Ann. § 30-2-314; Nev. Rev. Stat. Ann. § 104.2314; N.H. Rev. Stat. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Cent. Code § 41-02-31; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. Ann. tit. 2A, § 2-314; Or. Rev. Stat. § 72.3140; Pa. Stat. Ann. § 2314; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2.314; Utah Code Ann. § 70A-2-314; Va. Code Ann. § 8.2-314; Vt. Stat. Ann. tit. 9A, § 2-314; W. Va. Code § 46-2- 314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. Ann. § 34.1-2-314.

123. Defendant, through its acts and omissions set forth herein, in its sale, marketing, and promotion of the Products, made representations to Plaintiff and the Class that the Products

provide the claimed health benefits, among other representations. Plaintiff and the Class bought the Products manufactured, advertised and sold by Defendant.

124. Defendant was a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other consumers an implied warranty that those goods were merchantable.

125. However, Defendant breached that warranty implied in the contract for the sale of goods in that the Products do not provide the purported claimed health benefits, as set forth in detail herein.

126. As a result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the packaging or label of the goods.

127. Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

128. All conditions precedent to Defendant's liability under this contract, including notice, have been performed by Plaintiff and the Class.

129. Defendant is in privity with Plaintiff and members of the Class. Plaintiff and Class members were the intended beneficiaries of the Products. Defendant created the advertising at issue and warranted the Products to them directly and/or through the doctrine of agency. Further, Defendant knew the identity, purpose and requirements of Plaintiff and members of the Class and manufactured the Products to meet their requirements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Classes, that the Court enter judgment in her favor and against Defendant as follows:

a.  For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative for the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

b.  For an order declaring that Defendant's conduct violates the causes of action referenced herein;

c.  For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.  For compensatory, actual, double, treble, and punitive damages in amounts to be determined by the Court and/or jury;

e.  Awarding pre-judgment and post-judgment interest;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff and the Classes her reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.


Dated: May 12, 2025                    Respectfully submitted,

                                       **BURSOR & FISHER, P.A.**

                                       By: */s/ Philip L. Fraietta*
                                              Philip L. Fraietta

                                       **BURSOR & FISHER, P.A.**
                                       Joseph I. Marchese (*pro hac vice* forthcoming)
                                       Philip L. Fraietta (Bar No. 6337165)

Eleanor R. Grasso (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 100019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
        pfraietta@bursor.com
        egrasso@bursor.com

*Attorneys for Plaintiff and the Classes*