## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHELLE MOVE, JANET ROSS, and JESSICA SINGH individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>NEW CIBO VITA, LLC,<br><br>      Defendant. | **Case No. 2:25-cv-04148 (MEF-AME)**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Michelle Move, Janet Ross, and Jessica Singh ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

### NATURE OF THE ACTION

1. This is a class action suit brought against Defendant New Cibo Vita, LLC ("Cibo Vita") on behalf of all persons who purchased Defendant's Nature's Garden Probiotic Strawberry Yoggies and Nature's Garden Probiotic Mixed Berry Yoggies (the "Products").

2. Cibo Vita owns and manufactures Nature's Garden snacks, which is a prominent snack brand that is sold widely throughout the Unites States. Touting itself as a healthy and all-natural snack option, Cibo Vita promotes its brand as one where consumers can "Snack With Purpose."

3. Cibo Vita sells Trail Mixes, Nut Snacks, and Probiotic Fruit Snacks. These snacks are sold at bulk stores, grocery stores, and local market stores, including Costco, Acme, ShopRite, and Save a Lot, to name just a few in the State of New Jersey.

1

4. Cibo Vita advertises the functionality of their Probiotic Fruit Snacks, saying on their website, "Our snacks make no compromises on flavor while delivering functional benefits. Committed to wellness innovation, we offer a range of delicious fruit snacks **enhanced with billions of probiotics** and packed with fiber to support digestive wellness and immune health." (Emphasis added).

5. One of Cibo Vita's most popular snacks under their "Probiotic Fruit Snacks" line is their "Probiotic Yoggies."  Cibo Vita's Probiotic Yoggies are sold in Strawberry and Mixed Berry flavors.





6. On their website, Nature's Garden explains that "Yoggies are real fruit pieces, coated in a delectably smooth yogurt, delivering a taste experience of natural sweetness and yogurty tartness. Oh, the best part? Each Yoggies is loaded with dietary fiber and **probiotics - 2 billion per serving to be exact**." (Emphasis added).

7. On their packaging, Nature's Garden prominently advertises "2 BILLION PROBIOTIC CULTURES" and "NO ARTIFICIAL INGREDIENTS" with check marks. These claims are featured on all Yoggies packaging, advertising, and marketing.

8. However, despite Cibo Vita's bold assertion of the presence of "2 BILLION PROBIOTIC CULTURES," those probiotics are nowhere to be found in the products themselves. Far from what Cibo Vita claims, Plaintiff's independent testing verified that a serving of Yoggies does not contain 2 billion probiotic cultures or anywhere near it.

9. Cibo Vita's "NO ARTIFICIAL INGREDIENTS" claim is no more truthful. Yoggies' labeling lists chemically engineered and artificially processed ingredients, namely, Microencapsulated Probiotic Lactobacillus Rhamnosus GG.

10. By falsely promising that Yoggies are "healthier-for-you" and "better for you," Cibo Vita preys on consumers trying to make healthy choices for themselves and their families, duping them into purchasing the products for the perceived health benefits that Yoggies' products simply do not have. Unfortunately, consumers are falling for Cibo Vita's deception. As one verified consumer posted on Cibo Vita's website, "I got tired of taking Probiotic Pills so this is a great alternative. Will purchase again." Another consumer posted an Amazon review proclaiming that Yoggies product proclaiming "taste[s] much better than a probiotic tablet or pill. Plus I'm never quite certain what is in a probiotic pill but I am pretty certain of what is in this product."

11. The harm Cibo Vita has caused and continues to cause to consumers through its false advertising must come to an end. Consumers have been economically harmed by Cibo Vita's unlawful conduct. Among other things, Plaintiffs seek monetary and injunctive relief to stop Cibo Vita from advertising that Yoggies have the ingredients and health benefits it falsely claims.

## THE PARTIES

### A. Plaintiffs

12. Plaintiff Michelle Move is a resident and citizen of Monroe, New Jersey. On or around February 26, 2025, Plaintiff Move purchased one package of Cibo Vita's Nature's Garden Strawberry Probiotic Yoggies from Costco Wholesale in Hazlet, New Jersey.

13. When purchasing the Product, Plaintiff Move reviewed the accompanying labels and advertising, and understood them as representations by Defendant that the Product contained at least 2 billion probiotics and was free from artificial ingredients. Plaintiff Move relied on these representations in deciding to purchase the Product manufactured and sold by Defendant, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product from Defendant, or would have paid substantially less for it, had she known that it did not contain 2 billion probiotics and did in fact have artificial ingredients. The Product Plaintiff Move purchased was worthless, or was certainly worth less than Plaintiff Move was charged and paid, because it did not contain probiotics, or contained significantly less than 2 billion probiotics, and because it did contain artificial ingredients. Accordingly, Plaintiff Move was injured in fact and lost money as a result of Defendant's deceptive and unfair conduct.

14. Plaintiff Janet Ross is a resident and citizen of St. James, New York. On or around June 3, 2024, Plaintiff Ross purchased one package of Cibo Vita's Nature's Garden Strawberry Probiotic Yoggies from Costco Wholesale in Nesconset, New York.

15. When purchasing the Product, Plaintiff Ross reviewed the accompanying labels and advertising, and understood them as representations by Defendant that the Product contained at least 2 billion probiotics and was free from artificial ingredients. Plaintiff Ross relied on these representations in deciding to purchase the Product manufactured and sold by Defendant, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product from Defendant, or would have paid substantially less for it, had she known that it did not contain 2 billion probiotics and did in fact have artificial ingredients. The Product Plaintiff Ross purchased was worthless, or was certainly worth less than Plaintiff Ross was charged and paid, because it did not contain probiotics, or contained significantly less than 2

billion probiotics, and because it did contain artificial ingredients. Accordingly, Plaintiff Ross was injured in fact and lost money as a result of Defendant's deceptive and unfair conduct.

16. Plaintiff Jessica Singh is a resident and citizen of Pleasant Hill, California. On or around December 14, 2024, Plaintiff Singh purchased one package of Cibo Vita's Nature's Garden Strawberry Probiotic Yoggies from Amazon, which was shipped and sold by Kesh Goods, Inc.

17. When purchasing the Product, Plaintiff Singh reviewed the accompanying labels and advertising, and understood them as representations by Defendant that the Product contained at least 2 billion probiotics and was free from artificial ingredients. Plaintiff Singh relied on these representations in deciding to purchase the Product manufactured and sold by Defendant, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product from Defendant, or would have paid substantially less for it, had she known that it did not contain 2 billion probiotics and did in fact have artificial ingredients. The Product Plaintiff Singh purchased was worthless, or was certainly worth less than Plaintiff was charged and paid, because it did not contain probiotics, or contained significantly less than 2 billion probiotics, and because it did contain artificial ingredients. Accordingly, Plaintiff Singh was injured in fact and lost money as a result of Defendant's deceptive and unfair conduct.

**B. Defendant**

18. Defendant New Cibo Vita, LLC is a Delaware limited liability company with its principal place of business at 12 Vreeland Ave, Totowa, NJ 07512.

19. Defendant manufactures, markets, distributes, and sells Nature's Garden Probiotic Yoggies. Defendnant markets, distributes, and sells the aforementioned Products to consumers throughout the United States through its online website and through third-party retailers stores. Defendant manufactures, advertises, markets, and sells its Probiotic Yoggies throughout the State

of New Jersey and the United States. Defendant's Probiotic Yoggies, including those purchased by Plaintiff, are available in both retail establishments and online throughout New Jersey and the United States.

20. Defendant manufactures, markets, advertises, and distributes the Probiotic Yoggies throughout the United States. Defendant created and/or authorized the false, misleading, omitting, and deceptive advertisements, packaging, and labeling of the Products.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and at least one member of the proposed class is a citizen of a state different from Defendant.

22. This Court has personal jurisdiction over Defendant, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant is domiciled in this District and has committed acts in this District or directed acts at this District constituting or contributing to the false advertising alleged, so a substantial party of the acts and events giving rise to the claims occurred in, or were directed at, this District. Defendant has directed its false advertising into this District and Plaintiffs and consumers are being harmed in this District.

## FACTUAL BACKGROUND

### A. The Cibo Vita Company

23. Defendant Cibo Vita is a snack food manufacturer that primarily does business under its flagship name "Nature's Garden," which was launched in 2011.

24. Cibo Vita promotes itself as a manufacturer of "high-quality, innovative, 'better for you' snacks" intended "for today's health conscious, mindful snackers."

25. In 2023, Cibo Vita launched its "Probiotic Strawberry Yoggies" under the Nature's Garden brand name. Cibo Vita describes its Yoggies as "real fruit pieces, coated on delectably smooth yogurt."

26. Cibo Vita's Yoggies are spherical in shape with a creamy white color marked by contrasting colored cube-like corners and red edges peeking through the white coating.

**B.  Cibo Vita's False and Misleading Probiotic Claims**

27. To give itself a competitive advantage, Cibo Vita markets its Yoggies snacks as a "healthier" alternative.

28. Cibo Vita calls its product "**Probiotic** Yoggies Snack Packs" (emphasis added) and advertises that the snacks contain billions of probiotic cultures per serving (the "Probiotic Claims"). As detailed below, Cibo Vita's Probiotics Claims are in fact the centerpiece of its marketing, and an extraordinarily deceptive one at that.

29. The claim "√ 2 BILLION PROBIOTIC CULTURES" features prominently on Yoggies packaging:



30. The back panel of the packaging also touts billions of probiotics, stating that "what makes our Yoggies more than a simply scrumptious snack is the **billions of probiotics** . . . tucked away inside." (emphasis added).

31. The back panel further highlights the purported health benefits of the probiotics: "While enjoying their yogurty-tang, our probiotics will work to ensure your digestive system remains in tip-top shape."

 

32. Cibo Vita also features Probiotic Claims on its Nature's Garden website. For example, the product page for Cibo Vita's Strawberry Yoggies states "Each Yoggies is loaded with dietary fiber and probiotics – 2 billion per serving to be exact."



33. That product page also says, "Reap the wonders of billions of probiotics with Nature's Garden Probiotic Strawberry Yoggies – a snack that's delicious and functional for the whole family."



34. Cibo Vita's website also contains multiple blog posts touting Yoggies and its asserted probiotic benefits. For example, a blog post from February 19, 2024 (available as of February 13, 2025) states: "At Nature's Garden we love to think of ourselves as the bridge between taste and wellness. Our passion is to create products that not only taste good - but are also better for you. Imagine enjoying **2 billion probiotics** in a luscious fruit bite wrapped in creamy yogurt, or **5 billion live probiotics** combined with the immune-boosting power of elderberry, Vitamin C, and D. Intriguing - we know!" (emphasis added).

35. In another blog post from December 6, 2023 (available as of February 13, 2025), Cibo Vita claims that: "The creamy yogurt coating that envelops each Yoggie is brimming with billions of probiotics. Probiotics are live bacteria that play a crucial role in maintaining a healthy gut biome. They enhance digestion and support your immune system. What sets our Yoggies

apart is our patented microencapsulation system, ensuring that the power of each probiotic is retained as it journeys through your digestive system."

36. On some product packages, Cibo Vita goes even further, claiming that its Probiotic Strawberry Yoggies contain not just "2 BILLION," but rather "5 BILLION PROBIOTIC CULTURES," as shown in the Nature Garden's Facebook post below.



37. Cibo Vita makes the Probiotic Claims in an explicit attempt to communicate to consumers that the claimed billions of probiotics in Yoggies snacks make them healthier, and thus superior. For example, in one of Cibo Vita's most watched social media ads, a pregnant woman walks through an airport while looking at snack food options, and states that the other options are "so overpriced" and "are just not that good," while she promotes the alleged "2 billion probiotics" in Yoggies snacks.



38. Cibo Vita's Probiotics Claims have engendered undeserved positive media attention further amplifying the false claims to more consumers. For example, in 2023, Nature's Garden Probiotic Strawberry Yoggies was named the 2023 sofiTM New Product Award Winner in the Confectionery/Non-Chocolate category. But as set forth below, those claims, which are at the heart of Cibo Vita's aggressive marketing of its product, are demonstrably false and unlawful.

**C.** **Cibo Vita's Probiotic Claims Have Been Proven Wrong**

39. Cibo Vita's Probiotic Claims are literally false, deceptive, and misleading. PIM has commissioned independent, industry-standard testing of Yoggies snacks, which confirmed that an individual serving does not contain 2 billion probiotic colony-forming units (CFU), a measure of live bacteria in probiotic products.

40. As confirmed by Plaintiff's independent third-party testing, a serving of Yoggies snacks contained none of the 2 billion probiotic cultures touted in the Probiotic Claims. The claims are not just literally false, but at an extremely egregious level of misrepresentation. Further, Plaintiff's testing revealed that "no growth was detected on any of the dilutions."

41. Cibo Vita also claims that the nonexistent "2 billion probiotic cultures" in Yoggies are "microencapsulated" in a "patented system," giving consumers the false impression that there is something special about or an added benefit to the purported probiotics. Whatever the "patented system" may be, it does not change the fact that the "2 billion probiotic cultures" are not in the product.

42. Irrespective of whether they are "microencapsulated" in a "patented system," the small proportion of the probiotic cultures that Cibo Vita falsely claims is in its products does not impart the health benefits Cibo Vita so brazenly advertises.

43. Cibo Vita's false Probiotic Claims take advantage of an ever-growing health-conscious consumer population. Probiotics have seen increasing popularity in recent years, as consumers are more and more aware of the importance of gut health and the gut microbiome. The interest in improving digestive and immune health among consumers is on the rise, with consumers turning to probiotic products to help them achieve those goals. The Probiotic Claims are material to whether consumers decide to purchase Yoggies.

44. Online product reviews for the Yoggies products on amazon.com (shown below) reveal that consumers purchase Yoggies snacks precisely because they believe and rely on the Probiotic Claims, reflecting the material nature of the Probiotic Claims.



T.I.A.

★★★★★ **Way too delicious to stop at one serving...but do or else your belly might disagree!**
Reviewed in the United States on April 23, 2023
**Amazon Vine Customer Review of Free Product** ( What's this? )

Probiotics are a critical component in one's daily nutrition regiment. And wrapped up like fruit snacks!?! Nature's Garden hit a home run on this product! The strawberry flavor is like eating a handful of super fresh berries, or even a gummy version of some homemade strawberry jam. There is just the right amount of yogurt covering on each one that complements the strawberry bites wonderfully. There are between 12-15 in each bag, based upon the +/-10 I have eaten so far. While I don't have any way of truly confirming the quantity of probiotic cultures that exist, I can confirm that my stomach and innards have been 'moving' along just fine... Word of caution, though: do not eat more servings at once than prescribed/suggested on the serving information, or else you might get a bit gassy and have cause to visit the restroom rather quickly. This, as unscientific as it may be, leads me to believe that these are legit, probiotic snacks. These are delicious, and both my children and I love the Yoggie Bites! My family highly recommends them for children and adults, alike.



Sarah B.

★★★★★ **Delicious snacks!**
Reviewed in the United States on April 26, 2024
**Verified Purchase**

Saw these at my work one day and had one and they were so delicious. So I bought a bag of these and for the amount in the wholesale bag, it lasted me for the month (if I practiced self-control). I love that it is a probiotic snack and it tastes delicious without the guilt. Just don't leave it in a hot area, otherwise, they will melt bc it is a yogurt coating. Other than that, love them and will be buying another pack soon.



Shannon R.

★★★★★ **Delicious**
Reviewed in the United States on March 8, 2024
**Verified Purchase**

I was looking for a healthier snack to munch on while I'm at work - when I came across these little nuggets - and am honestly surprised at how yummy they are. The texture is like a gummy, but wrapped in a delicious yogurt coating (with a bunch of probiotics). Like a chocolate covered raisin, but healthier. 10/10 would recommend.

45. Indeed, some consumers even eat Yoggies specifically to complement or even replace probiotic supplements. For example, a representative review posted on amazon.com on December 23, 2023, and shown below, is titled "Better than a Probiotic pill, simple ingredients" and states that Yoggies "taste much better than a probiotic tablet or pill. Plus I'm never quite certain what is in a probiotic pill but I am pretty certain of what is in this product."



46. Likewise, consumer reviews on Cibo Vita's website, naturesgarden.net, further confirm that consumers believe and rely on the material Probiotic Claims when deciding to purchase Yoggies. One verified consumer posted a review on April 8, 2024, stating that she uses Yoggies snacks to replace her dedicated probiotic supplements: "I got tired of taking Probiotic Pills so this is a great alternative. Will purchase again."



47. These responses illustrate two critical features of Cibo Vita's false claims. First, they clearly mislead consumers by grossly exaggerating the quantities of probiotics in Yoggies. Second, those false claims are material to consumers' purchase decisions, because they rely on

them to select Yoggies over other products. For example, by misleading consumers into believing that a serving of Yoggies snacks provides the number of probiotics stated in the Probiotic Claims, Cibo Vita has caused consumers to forego the benefits of true probiotic supplements and to waste their hard-earned money on products they would not have otherwise purchased.

**D.  Cibo Vita's False and Misleading Ingredients Claims**

48. Cibo Vita's false advertising does not stop at its Probiotics Claims. It also makes the claim that Yoggies does not contain artificial ingredients (the "Ingredient Claims"). The Ingredient Claims are, like the Probiotic Claims, literally false.

49. On the front panel of the packaging for some of the Yoggies products, Cibo Vita makes the following promise: "✓ NO ARTIFICIAL INGREDIENTS."



50. Cibo Vita's false Ingredients Claims are bolstered by the language "POWERED BY PLANTS" on the top of every Yoggies front label, which further suggests to consumers that the product is made without any artificial ingredients.



51. Furthermore, Cibo Vita's use of the brand name "Nature's Garden," in conjunction with the overall product packaging containing the statements identified above in Paragraphs 46 and 47, clearly communicates to consumers that the company's snack products are made without any artificial ingredients. These various claims are part of Cibo Vita's concerted plan to mislead consumers about the health benefits of Yoggies.

52. Despite these repeated representations, the ingredients panel on the back of the Yoggies packages reveals that Cibo Vita's product is made with an artificial ingredient Microencapsulated Probiotic Lactobacillus Rhamnosus GG.

53. Microencapsulated Probiotic Lactobacillus Rhamnosus GG describes the strain of probiotics in the microencapsulation technology that is allegedly in the Yoggies product. Though Lactobacillus Rhamnosus GG is itself naturally occurring, the microencapsulation required to artificially preserve it is synthetically developed and does not exist in nature.

54. Consumers considering the Yoggies product label and taking the Ingredient Claims as true would reasonably believe that Microencapsulated Probiotic Lactobacillus Rhamnosus GG is not an artificial ingredient.

55. Consumers considering the Yoggies product label and taking the Ingredient Claims as true would reasonably believe that Microencapsulated Probiotic Lactobacillus Rhamnosus GG is not made using an artificial process.

56. Cibo Vita's false and misleading Ingredient Claims harm consumers who purchase Yoggies because of their interest in healthy foods with no artificial ingredients.

57. The Ingredient Claims are material to whether consumers decide to purchase Yoggies. As indicated in the examples above, consumers purchase Yoggies because they are misled into believing the product contains all-natural probiotics. These material, false claims are featured on Yoggies packaging and throughout its marketing.

**E. The False and Misleading "Healthy" Claims**

58. In addition to aggressively and falsely marketing the number of probiotic cultures in Yoggies and the purported lack of artificial ingredients, Cibo Vita positions and promotes Yoggies snacks as "healthy" by repeatedly stating that the product is a "healthy snack," "healthier-for- you" and "better for you" (the "Healthy Claims"). But yet again, these claims are false.

59. For example, on the homepage for its Nature's Garden website, Cibo Vita prominently declares: "We take snacking seriously! We want you to feel like the best YOU possible, so we create deliciously healthy snacks that support a better-for-you lifestyle. Check out our best sellers - we like to think of them as snacking royalty!" (emphasis added). The referenced "best sellers" include Yoggies, among other products.

60. On the product page for its Strawberry Yoggies, Cibo Vita invites consumers to "Chow down with this healthier-for-you treat that's creamy, chewy, and crazy delicious." (emphasis added).

61. Despite its bold Healthy Claims, Cibo Vita's Yoggies snacks are not "healthy." Cibo Vita adds 7 grams of sugar per serving to the product, which also has 2.5 grams of saturated fat per serving. Per FDA guidelines, products like Yoggies must not exceed 2.5 grams of added sugar or 2 grams of saturated fat to qualify as "healthy." Yoggies has more than double the permitted amount of added sugar and exceeds 2 grams of saturated fat. The product is not "healthy," a health-snack, or a "seamless blend of taste, health, and innovation" as Cibo Vita claims.

62. Moreover, even if Cibo Vita's Yoggies snacks contained the claimed "2 billion probiotic cultures," which they do not, the mere presence of these probiotics alone is not enough for Cibo Vita to make the Healthy Claims. Whether a probiotic is "healthy" depends on how it is delivered to the body and its impact on the human body after ingestion. Cibo Vita offers no substantiation for its claim that Yoggies snacks have a healthy impact once ingested. Cibo Vita simply makes the claim.

63. These false Healthy Claims are amplified through Cibo Vita's social media on TikTok, Instagram, Facebook, Pinterest, and also appear on websites for popular retailers, including Walmart, Amazon, Costco, and Sam's Club.

64. The false and misleading Healthy Claims prey on consumers searching for healthy snacks. And they have been effective. Consumer testimonials reflect the material nature of these claims and resulting deception of parents (among others) duped into believing that the Yoggies product is a health-conscious choice and safe snack for their children. For example, in the

YouTube video linked below, a mother refers to Yoggies as "snacks that you trust your kids to eat" and that are "mom approved."



(https://www.youtube.com/watch?v=rEXEw1gLT5g)

65. The false and misleading Healthy Claims cause consumers to believe that Yoggies are healthy and nutritious. The Healthy Claims are material to whether consumers decide to purchase Yoggies.

**F.  Injuries to Plaintiffs and the Class Members**

66. When Plaintiffs purchased Defendant's Products, Plaintiffs did not know, and had no reason to know, that Defendant's Products did not contain the billions of probiotics and were not free from artificial ingredients as advertised. Plaintiffs would not have purchased Defendant's

Products had they known the Products did not contain the billions of probiotics as advertised, or would have paid substantially less for them.

67. Consumers lack the ability to test or independently ascertain or verify a Product's microscopic nutritional ingredients like probiotics, especially at the point of sale, and therefore must rely on Defendant to report truthfully and honestly what the Products contain on the Products' packaging and labels.

68. Further, given Defendant's position as a sophisticated food manufacturer, Plaintiffs and reasonable consumers trusts and relied on Defendant's representations and omissions regarding the presence of billions of probiotics and lack of artificial ingredients in the Products.

69. Defendant boldly claims and advertises that its Probiotic Yoggies contain "2 BILLION PROBIOTICS," have "NO ARTIFICIAL INGREDIENTS," and are "healthy." A reasonable consumer would understand this to mean that Defendant's Yoggies contain at least 2 billion probiotics, have no artificial ingredients, and are healthy.

70. No reasonable consumer would have paid any amount for probiotic food products that do not contain probiotics, nor for products free from artificial ingredients that in fact contain artificial ingredients, nor for healthy products that are actually unhealthy.

71. Thus, if Plaintiffs and the Class Members had been informed that Defendant's Products did not contain probiotics, or contained a significantly less amount of probiotics, and contained artificial ingredients, they would not have purchased the Products or would have paid substantially less for the Products.

72. Defendant's false, misleading, and deceptive representations and omissions regarding the presence of probiotics and lack of artificial ingredients in the Products are likely to continue

to deceive and mislead reasonable consumers and the public, as it has already deceived and mislead Plaintiffs and the Class Members.

73. Plaintiffs and the Class Members bargained for products that had "2 BILLION PROBIOTICS" and "NO ARTIFICIAL INGREDIENTS." Plaintiffs and Class Members were injured by the full purchase price of the Products because (i) the Products are worthless, as they are probiotic products that contain no or substantially less probiotics, and (ii) Plaintiffs and Class Members would not have purchased the Products or would have paid substantially less for them had Defendant decided not to falsely represent that the Products contained probiotics, were free from artificial ingredients, and were healthy.

74. As alleged above, Plaintiffs and Class Members' Products contained no or substantially less than 2 billion probiotics, contained artificial ingredients, and were unhealthy.

75. Plaintiffs and Class Members are further entitled to compensatory, double, treble, and punitive damages, injunctive relief, attorneys' fees and costs, and any further relief as this Court deems just and proper.

## CLASS ACTION ALLEGATIONS

76. Plaintiffs hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

77. Plaintiffs seek to represent a class defined as all individuals in the United States who purchased Defendant Cibo Vita, LLC's Nature's Garden Strawberry Probiotic Yoggies and/or Nature's Garden Mixed Berry Probiotic Yoggies (the "Class"). Excluded from the Class is Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assignees, or other persons or entities

related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

78. Plaintiff Move also seeks to represent a subclass consisting of Class Members who made purchases in New Jersey (the "New Jersey Subclass").

79. Plaintiff Ross also seeks to represent a subclass consisting of Class Members who made purchases in New York (the "New York Subclass").

80. Plaintiff Singh also seeks to represent a subclass consisting of Class Members who made purchases in California (the "California Subclass").

81. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

82. **Numerosity.** Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable. On information and belief, Members of the Class and Subclasses number in the hundreds of thousands. The precise number of Class and Subclass Members and their identities are unknown to Plaintiffs at this time but will be determined through discovery. Class and Subclass Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

83. **Commonality.** Common questions of law and fact exist as to all Members of the Class and Subclasses and predominate over any questions affecting only individual Class or Subclass Members. These common legal and factual questions include, but are not limited to, the following:

      a. Whether the Products contain probiotics;

b.  Whether Defendant knew or should have known that the Products do not contain probiotics;

c.  Whether Defendant is liable to Plaintiffs and the Classes for unjust enrichment;

d.  Whether Defendant violated the New Jersey Consumer Fraud Act;

e.  Whether Defendant violated the New York General Business Law;

f.  Whether Defendant violated the California Unfair Competition Law, the California False Advertising Law, and the California Consumer Legal Remedies Act;

g.  Whether Plaintiffs and the Classes have sustained monetary loss and the proper measure of that loss; and

h.  Whether the lack of probiotics renders Defendant's Products falsely and misleadingly labeled;

i.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive.

84.  **Typicality.** The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all members of the Classes, purchased the Products, which were worth less due to the lack of probiotics. The representative Plaintiffs, like all members of the Classes, has been damaged by Defendant's misconduct in the very same way as the members of the Classes. Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

85.  **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Members of the Class and Subclasses. Plaintiffs have retained counsel that is highly experienced in complex

26

consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclasses. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class and Subclasses.

86. **Predominance.** Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Classes. The Class's and Subclasses' issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading labeling of its Products.

87. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Classes are relatively small compared to the burden and expense of individual litigation of her claims against Defendant. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

88. In the alternative, the Classes may be certified because:

    a. the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

b. the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede her ability to protect her interests; and/or

c. Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## <u>COUNT I</u>
**Violation of the New Jersey Consumer Fraud Act, N.J.S.A § 56.8-1, et seq.**
**(On Behalf of Plaintiff Move, the Class and the New Jersey Subclass)**

89. Plaintiff Move repeats the allegations contained the paragraphs above as if fully set forth herein.

90. Plaintiff Move brings this claim individually and on behalf of the Class and New Jersey Subclass.

91. At all times relevant to this action, there was in full force and effect the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, et seq., which was enacted and designed to protect consumers against unfair, deceptive, or fraudulent business practices.

92. N.J.S.A. § 56:8-2 provides:

The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact … in connection with the sale or advertisement of any merchandise … whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

93. At all relevant times, Plaintiff Move, Class members, New Jersey Subclass members, and Defendant were "persons" within the meaning of N.J.S.A. § 56:8-1.

94. The Products manufactured, marketed, and sold by Defendant are merchandise within the meaning of the NJCFA.

95. Plaintiff Move, the Class and New Jersey Subclass members are consumers within the meaning of the NJCFA and are entitled to the statutory remedies made available herein.

96. Defendant violated and continues to violate the NJCFA by representing that its Products have characteristics, uses, and benefits which they do not have, and advertising the Products to have characteristics, uses, and benefits which Defendant knows the Products do not have.

97. Defendant violated the NJCFA by advertising the Products in the manners described above, when they knew, or should have known, that those representations and advertisements were false and/or misleading.

98. Defendant intended that Plaintiff Move and the Class members and members of the New Jersey Subclass would rely on its deception by purchasing the Products, unaware of the material facts described above. This conduct constitutes consumer fraud within the meaning of the NJCFA.

99. Defendant's conduct, as alleged herein, constitutes unlawful, unfair, and/or deceptive business practices within the meaning of the NJCFA.

100. Defendant's conduct is malicious, fraudulent, and wanton, and provides misleading information that the Products provide health benefits that less expensive or other products do not, when in fact scientific evidence demonstrates that the Products do not provide the advertised health benefits.

101. Defendant's conduct has proximately caused damage to Plaintiff Move, the Class member and the New Jersey Subclass members, in the form of, *inter alia*, monies spent to purchase the Products they otherwise would not have, in an amount to be proven at trial.

102. Had Defendant represented accurate information and disclosed all material information regarding the Products in its advertising, marketing, and packaging, Plaintiff Move, the Class,

and the New Jersey Subclass members would not have purchased the Products or would have paid substantially less for the Products.

103. As a result of Defendant's violations of the NJCFA, Plaintiff Move, the Class, and the New Jersey Subclass members are entitled to compensatory damages, actual damages, double damages, treble damages, injunctive relief, costs, and attorneys' fees.

**<u>COUNT II</u>**
**Violation of New York General Business Law § 349, et seq.**
**(On Behalf of Plaintiff Ross and the New York Subclass)**

104. Plaintiff Ross incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

105. Plaintiff Ross brings this claim individually and on behalf of members of the New York Subclass against Defendant.

106. Plaintiff Ross and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

107. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

108. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

109. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by representing false, material information about the Product.

110. The foregoing deceptive acts and practices were directed at consumers.

111. The foregoing deceptive acts and practices are misleading in a material way because they represent that the Products have qualities that they do not have, including representations that the Products contain 2 billion probiotics and do not contain artificial ingredients.

112. Plaintiff Ross and members of the New York Subclass were injured as a result because (a) they would not have purchased the Product if they had known of Defendants' omissions regarding the Product; and (b) they overpaid for the Product on account of the omissions.

113. On behalf of herself and other members of the New York Subclass, Plaintiff Ross seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and an order enjoining Defendants' deceptive conduct, and any other just and proper relief available under Section 349 of the New York General Business Law.

### COUNT III
**Violation of New York General Business Law § 350, et seq.**
**(On Behalf of Plaintiff Ross and the New York Subclass)**

114. Plaintiff Ross incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

115. Plaintiff Ross brings this claim individually and on behalf of members of the New York Subclass against Defendant.

116. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

117. Based on the foregoing, Defendant has engaged in customer-oriented conduct that is deceptive or misleading in a material way, which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting that the Products contain 2 billion probiotics and do not contain any artificial ingredients.

118. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

119. This misrepresentation has resulted in consumer injury or harm to the public interest.

31

120. As a result of this misrepresentation, Plaintiff Ross and Members of the New York

Subclass have suffered economic injury because (a) they would not have purchased the Products

if they had known of Defendant's misrepresentations that the Products contain 2 billion

probiotics and do not contain artificial ingredients; and (b) they overpaid for the Products on

account of the misrepresentations.

121. On behalf of herself and other members of the New York Subclass, Plaintiff Ross seeks

to enjoin the unlawful acts and practices described herein, to recover their actual damages or five

hundred dollars whichever is greater, three times actual damages, and reasonable attorneys' fees

and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper

relief available under Section 350 of the New York General Business Law.

## <u>COUNT IV</u>
**California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of Plaintiff Singh and the California Subclass)**

122. More details incorporates the foregoing allegations as if fully set forth herein.

123. Plaintiff Singh brings this claim individually and on behalf of the California Subclass

against Defendant.

124. California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or

fraudulent business act or practice."  For the reasons discussed above, Defendant has engaged

unlawful, unfair, and fraudulent business acts or practices in violation of California Business and

Professions Code § 17200.

125. Defendant has violated the UCL by engaging in **<u>unlawful business practices</u>** by

violating the CLRA, Cal. Civ. Code §§1770(a)(5), (a)(7), and (a)(9), by violating California's

False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.,* and by violating the common

law by, *inter alia,* making false representations and warranties concerning the qualities of the

Products and retaining the unlawfully obtained benefit therefrom. Plaintiff Singh reserves the right to allege additional violations of law which constitute other unlawful business acts or practices.

126. Defendant has also violated the UCL's prohibition on **unfair business practices** because its conduct is substantially injuries to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

127. There were reasonably available alternatives to further Defendant's legitimate business interest other than by engaging in the conduct described above.

128. Defendant has further violated the UCL's prohibition on **fraudulent business practices** by making knowingly, or that which Defendant reasonably should know, false and misleading representations and warranties about its Product which were likely to deceive the consuming public within the meaning of Bus. & Prof. Code § 17200.

129. Plaintiff Singh and the California Subclass Members suffered a substantial injury by virtue of buying the Products they would not have purchased absent Defendant's unlawful, unfair, and fraudulent marketing and advertising about the qualities of its Products.

130. There is no benefit to consumers or competition from its marketing claiming that the Products had qualities that it did not.

131. Plaintiff Singh and the California Subclass Members had no way of reasonably knowing that the Products they purchased were not marketed, packaged, or labeled accurately. Thus, they could not have reasonably avoided the injury each of them suffered.

132. The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives

which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff Singh and the California Subclass Members.

133. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff Singh and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to (a) provide restitution to Plaintiff Singh and the Members of the California Subclass; (b) disgorge all revenues obtained as a result of the violation of the UCL; and (c) pay Plaintiffs' attorneys' fees and costs.

## COUNT V
**California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.**
**(On Behalf of Plaintiff Singh and the California Subclass)**

134. Plaintiff Singh incorporates the foregoing allegations as if fully set forth herein.

135. Plaintiff Singh brings this claim on behalf of herself and the California Subclass against Defendant.

136. Defendant's acts and practices, as described above, have deceived and are likely to continue to deceive California Subclass Members and the public.  As described throughout this Complaint, Defendant misrepresented the Products as containing 2 billion probiotics and does not contain artificial ingredients when, in fact, the Products have significantly less probiotics and do contain artificial ingredients.

137. By its actions, Defendant disseminated uniform advertising regarding the Products to and across California and the United States.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq.* Such advertisements were intended to—and likely did—deceive the consuming public.

138. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose that the Products did not have the qualities that Defendant claimed.

139. Defendant, nonetheless, continues to represent otherwise to consumers.

140. In making and disseminating these statements, Defendant knew, or reasonably should have known, that its advertisements were untrue and misleading in violation of California law. Plaintiff Singh and the California Subclass Members based their purchasing decision on Defendant's omission about the true qualities of its Products. Plaintiff Singh and the California Subclass Members were injured in fact and lost money and property as a result.

141. The Misrepresentations by Defendant about the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

142. As a result of Defendant's wrongful conduct, Plaintiff Singh and the California Subclass Members lost money in an amount to be proven at trial. Plaintiff Singh and the California Subclass Members are therefore entitled to restitution as appropriate for this cause of action.

143. Plaintiff Singh and the California Subclass therefore seek (1) all monetary and non-monetary relief allowed by law, including restation of all profits stemming from Defendant's unfair, deceptive, and untrue business practices; (2) declaratory relief; (3) reasonable attorneys' fees and costs under California Code Civ. Proc. § 1021.5; (4) injunctive relief; and (5) other equitable relief as the Court deems appropriate.

## <u>COUNT VI</u>
**California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.**
**(On Behalf of Plaintiff Singh and the California Subclass)**

144. Plaintiff Singh incorporates the foregoing allegations as if fully set forth herein.

145. Plaintiff Singh brings this claim individually and on behalf of the California Subclass against Defendant.

146. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods … have … characteristics … uses, [or] benefits … which they do not have[.]"

147. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, [or] quality … if they are of another."

148. Civil Code § 1770(a)(9) prohibits "advertising goods … with intent not to sell them as advertised."

149. Defendant violated Civil Code §§ 1770(a)(5), (a)(7), and (a)(9) by holding out that its Products had "2 BILLION PROBIOTICS" and "NO ARTIFICIAL INGREDIENTS," when the Products have significantly less than 2 billion probiotics and do have artificial ingredients.

150. Defendant conveyed to consumers like Plaintiff Singh and the California Subclass Members, that the Product contained "2 BILLION PROBIOTICS" and "NO ARTIFICIAL INGREDIENTS." However, the Product contained significantly less than 2 billion probiotics, and because it did contain artificial ingredients

151. Defendant has exclusive and/or superior knowledge about the true qualities of its Product.

152. Defendant made, and continued to make, these representations and warranties to Plaintiff Singh and the California Subclass Members, despite having superior knowledge of the qualities of its Products. Accordingly, Defendant affirmatively misrepresented the true qualities of the Products despite its knowledge that the Products were not as advertised.

153. Plaintiff Singh and the California Subclass Members suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid money for the Products

36

that they otherwise would not have incurred or paid had they known that Defendant's representations were untrue and the Products did not conform to the advertisements.

154. On August 4, 2025, prior to the filing of this complaint, Plaintiffs' counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA with respect to its false and misleading representations and warranties, and demanded that Defendant cease and desist from such violations and make full restitution by refunding monies received therefrom. The letter stated that it was sent on behalf of Plaintiff Singh, and all similarly situated purchasers.

155. Pursuant to Civ. Code § 1780, Plaintiff Singh and the California Subclass seek an order enjoining Defendant from continuing its violative acts and practices.

## COUNT VII
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Class and the Subclasses)

156. Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

157. Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendant.

158. This claim is brought under the laws of the State of New Jersey.

159. "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the

37

plaintiff. The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009) (quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007)).

160. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn," New Jersey law, or, alternatively, general unjust enrichment law principles, applies to those claims. *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 58.

161. Plaintiffs and the Class and Subclass members conferred a benefit on Defendant in the form of monies paid to purchase Defendant's defective and worth less Products.

162. Defendant voluntarily accepted and retained this benefit.

163. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class/Subclass members' purchases of the Products, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that the Products have billions of probiotics when in fact they do not, and have no artificial ingredients when they do, which caused injuries to Plaintiffs and the Class members because: (a) they would not have purchased the Products on the same terms if the true facts concerning the Products' purported health benefits and contents had been known; and (b) they paid a price premium due to the misrepresentations in Defendant's advertising, marketing, and labeling.

164. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and the Class/Subclasses is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Classes for its unjust enrichment, as ordered by the Court.

165. Privity is not required. Nevertheless, Defendant is in privity with Plaintiffs and members of the Class and Subclasses. Plaintiffs and Class/Subclass members were the intended

beneficiaries of the Products. Defendant created the advertising at issue and warranted the Products to them directly and/or through the doctrine of agency. Further, Defendant knew the identity, purpose and requirements of Plaintiffs and members of the Class and Subclasses and manufactured the Products to meet their requirements.

### COUNT VIII
### Breach of Express Warranty
### (On Behalf of Plaintiffs and the Class and Subclasses)

166. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

167. Plaintiffs bring this Count for breach of express warranty on behalf of themselves and the Class and Subclasses under N.J.S.A § 12A:2-313, or, in the alternative, on behalf of a Class of similarly situated persons from his or her respective state of residence pursuant to the applicable provision identified below from his or her respective state of residence.

168. The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

169. At all times, New Jersey and the following 48 states, including the District of Columbia, have codified and adopted the provisions the Uniform Commercial Code governing the express warranty of merchantability: Ala. Code 1975 § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. § 47-2313; Ark. Code Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. Ann. § 4-2-313; Conn. Gen. Stat. § 42a-313; Del. Code Ann. tit. 6 § 2-313; D.C. Code § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code Ann. § 28-2-313; 810 Ill. Comp. Stat. 5/2-313; Ind. Code. Ann. § 26-1-2-313; Iowa Code Ann. § 554.2313; Kansas Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; Me. Rev. Stat. Ann. tit. 11, § 2-313; Md. Com. Law Code Ann. § 2-313; Mass. Gen. Laws ch.106, § 2-313; Mich.

39

Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code. Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code. Ann. § 30-2-313; Nev. Rev. Stat. Ann. § 104.2313; N.H. Rev. Stat. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Cent. Code § 41-02-30; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. Ann. tit. 12A, § 2-313; Or. Rev. Stat. § 72.3130; Pa. Stat. Ann. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2.313; Utah Code Ann. § 70A-2-313; Va. Code Ann. § 8.2-313; Vt. Stat. Ann. tit. 9A, § 2-313; Wash. Rev. Code. Ann. § 62A.2-313; W. Va. Code Ann. § 46-2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. Ann. § 34.1-2-313.

170. Plaintiffs, and each Class and Subclass member, formed a contract with the Defendant at the time Plaintiffs and other members of the Class and Subclasses purchased the Products. The terms of that contract include the promises and affirmations of fact relating to the Products' purported probiotics and probiotic-health benefits made by Defendant on its product labels and repeated throughout its marketing campaign, as described above. This product labeling and advertising became part of the basis of the bargain and is part of a standardized contract between Plaintiffs and the members of the Class and Subclasses on the one hand, and Defendant on the other, and thus constituted an express warranty.

171. Defendant sold the goods to Plaintiffs and other Class and Subclass members, who bought the goods from Defendant.

172. All conditions precedent to Defendant's liability under this contract, including notice, have been performed by Plaintiffs and the Class and Subclasses.

173. Defendant is in privity with Plaintiffs and members of the Class and Subclasses. Plaintiffs and Class and Subclass members were the intended beneficiaries of the Products. Defendant created the advertising at issue and warranted the Products to them directly and/or through the doctrine of agency. Further, Defendant knew the identity, purpose and requirements of Plaintiffs and members of the Class and Subclasses and manufactured the Products to meet their requirements.

174. Defendant breached the terms of this contract, including the express warranties, by not providing the Products capable of delivering the claimed health benefits. As a result of this breach, Plaintiffs and the Class and Subclasses did not receive goods as warranted by Defendant.

175. As a proximate result of Defendant's breach of its contract and its warranties, Plaintiffs and the Class and Subclasses have been damaged in an amount to be determined at trial.

### COUNT IX
### Breach of Implied Warranty of Merchantability
### (On Behalf of Plaintiffs and the Class and Subclasses)

176. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

177. Plaintiffs bring this Count for breach of implied warranty on behalf of themselves as a nationwide Class under N.J.S.A. § 12A:2-314 or in the alternative on behalf of a Class of similarly situated persons from his or her respective state of residence pursuant to the applicable provision, identified below, from his or her respective state of residence

178. The Uniform Commercial Code § 2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. To be "merchantable," goods must, *inter alia*, "conform to the promise or affirmations of fact made on the container or label if any." U.C.C. § 2-314(2).

179. At all times, New Jersey and the following 48 states, including the District of Columbia, have codified and adopted the provisions the Uniform Commercial Code governing the implied warranty of merchantability: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. § 47-2314; Ark. Code Ann. § 4-2 314; Cal. Com. Code § 2314; Colo. Rev. Stat. Ann. § 4-2-314; Conn. Gen. Stat. § 42a-2-314; Del. Code Ann. tit. 6, § 2-314; D.C. Code § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code Ann. § 28-2-314; 810 Ill. Comp. 810, 5/2-314; Ind. Code. Ann. § 26-1-2-314; Iowa Code Ann. § 554.2314; Kansas Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. art. § 2520; Me. Rev. Stat. Ann. tit. 11, § 2-314; Md. Com. Law Code Ann. § 2-314; Mass. Gen. Laws ch.106, § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code. Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code. Ann. § 30-2-314; Nev. Rev. Stat. Ann. § 104.2314; N.H. Rev. Stat. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Cent. Code § 41-02-31; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. Ann. tit. 2A, § 2-314; Or. Rev. Stat. § 72.3140; Pa. Stat. Ann. § 2314; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2.314; Utah Code Ann. § 70A-2-314; Va. Code Ann. § 8.2-314; Vt. Stat. Ann. tit. 9A, § 2-314; W. Va. Code § 46-2- 314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. Ann. § 34.1-2-314.

180. Defendant, through its acts and omissions set forth herein, in its sale, marketing, and promotion of the Products, made representations to Plaintiffs and the Class and Subclasses that the Products provide the claimed health benefits, among other representations. Plaintiffs and the Class and Subclasses bought the Products manufactured, advertised and sold by Defendant.

181. Defendant was a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Class and Subclasses, and there was in the sale to Plaintiffs and other consumers an implied warranty that those goods were merchantable.

182. However, Defendant breached that warranty implied in the contract for the sale of goods in that the Products do not provide the purported claimed health benefits, as set forth in detail herein.

183. As a result of Defendant's conduct, Plaintiffs and the Class and Subclasses did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the packaging or label of the goods.

184. Plaintiffs and the Class and Subclasses have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

185. All conditions precedent to Defendant's liability under this contract, including notice, have been performed by Plaintiffs and the Class and Subclasses.

186. Defendant is in privity with Plaintiffs and members of the Class and Subclasses. Plaintiffs and Class and Subclass members were the intended beneficiaries of the Products. Defendant created the advertising at issue and warranted the Products to them directly and/or through the doctrine of agency. Further, Defendant knew the identity, purpose and requirements of Plaintiffs and members of the Class and Subclasses and manufactured the Products to meet their requirements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request, individually and on behalf of the alleged Classes, that the Court enter judgment in their favor and against Defendant as follows:

a.   For an order certifying the Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives for the Class and Subclasses, and naming Plaintiffs' attorneys as Class Counsel;

b.   For an order declaring that Defendant's conduct violates the causes of action referenced herein;

c.   For an order finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

d.   For compensatory, actual, statutory, double, treble, and punitive damages in amounts to be determined by the Court and/or jury;

e.   Awarding pre-judgment and post-judgment interest;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiffs and the Class and Subclasses reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.


Dated: August 6, 2025                          Respectfully submitted,

                                               **BURSOR & FISHER, P.A.**

                                               By: */s/ Philip L. Fraietta*
                                                       Philip L. Fraietta

                                               **BURSOR & FISHER, P.A.**
                                               Joseph I. Marchese (*pro hac vice* forthcoming)
                                               Philip L. Fraietta (Bar No. 6337165)

Eleanor R. Grasso (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 100019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jmarchese@bursor.com
           pfraietta@bursor.com
           egrasso@bursor.com

*Attorneys for Plaintiffs and the Classes*

## <u>CLRA Venue Declaration Pursuant to California Civil Code § 1780(d)</u>

I, Philip L. Fraietta, declare as follows:

    1.   I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs. Plaintiff Singh resides in Pleasant Hill, California.  I have personal knowledge of the facts set forth in this declaration and if called as a witness, I could and would completely testify thereto under oath.

    2.   The complaint filed in this action is filed in the proper place for trial under Civil Code § 1780(d) because Defendant is domiciled in this District and has committed acts in this District or directed acts at this District constituting or contributing to the false advertising alleged, so a substantial party of the acts and events giving rise to the claims occurred in, or were directed at, this District.

    3.   I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at New York, New York this August 6, 2025.

*/s/ Philip L. Fraietta*
Philip L. Fraietta
